**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Renee Delu,<br><br>                   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>                   Defendant. | No. CV-21-01849-PHX-DLR<br><br>**ORDER** |

On August 15, 2016, Claimant Renee Delu applied for Disability Insurance Benefits pursuant to Title II of the Social Security Act ("SSA"), alleging disability beginning January 6, 2014. (AR. 237–43.) After the Acting Commissioner of Social Security denied Delu's application initially and on reconsideration, Delu requested an administrative hearing before an Administrative Law Judge ("ALJ"). (AR. 152–55, 160–63, 34–62.) Following the hearing, the ALJ issued an unfavorable decision on April 30, 2018, finding Delu not disabled. (AR. 12–33.) Delu sought judicial review, but ultimately the Commissioner and Delu stipulated to a remand for a new hearing and decision. (AR. 895–95.) Following a new hearing, the ALJ issued an unfavorable decision on March 18, 2020. (AR. 765–88, 793–832.) Delu again sought judicial review. (AR. 1562–63.) The Commissioner and Delu once more stipulated to a remand for a new hearing and decision. (*Id.*)

A new ALJ held a hearing on August 13, 2021, and issued a decision on September 16, 2021, finding Delu not disabled. (AR. 1484–1537, 1454–83.) Because Delu did not file

written exceptions to the ALJ's finding, the ALJ's September 2021 determination became the final decision of the Commissioner of the Social Security Administration sixty days later. Pursuant to 42 U.S.C. § 405(g), Delu seeks judicial review of the Commissioner's decision. Having reviewed the briefs (Docs. 19, 20, 21) and the Administrative Record, the Court now affirms the ALJ's 2021 decision.

## I. The Sequential Evaluation Process

To determine whether a claimant is disabled under the SSA, the ALJ must follow a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ determines whether the claimant is engaging in substantial, gainful work activity. 20 C.F.R. § 404.1520(a)(4)(i). If she is, then the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If she does not, then the claimant is not disabled. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or is medically equivalent to an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, then the ALJ proceeds to step four, where the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still perform her past work, then she is not disabled. *Id.* If she cannot perform her past work, the ALJ proceeds to the fifth and final step, at which the ALJ determines whether the claimant can perform any other work in the national economy based on her age, work experience, education, and RFC. 20 C.F.R. § 404.1520(a)(4)(v). If not, then claimant is disabled and entitled to benefits under the SSA. *Id.* The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

## II. Judicial Review

A district court must affirm an ALJ's decision "unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

1  "Substantial evidence is more than a mere scintilla but less than a preponderance. It is such
2  relevant evidence that a reasonable mind might accept as adequate to support a
3  conclusion." *Id.* (cleaned up). If the "evidence is susceptible to more than one rational
4  interpretation," a court must uphold the ALJ's decision. *Id.* That said, the court should
5  "consider the entire record as a whole and may not affirm simply by isolating a specific
6  quantum of supporting evidence." *Id.* Additionally, the court only reviews the issues raised
7  by the party challenging an ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th
8  Cir. 2001).

**III. Analysis**

Delu makes two arguments: (1) the ALJ's step-four RFC determination is unsupported by substantial evidence because the ALJ failed to consider medical testimony by Dr. David Bruce that Delu is a fall risk and (2) the ALJ's step-five determination is unsupported by substantial evidence because the ALJ failed to consider vocational expert testimony that employers are unlikely to hire an employee that is a fall risk. The Court addresses each argument in turn.

**A. Dr. Bruce's Opinion**

Dr. David R. Bruce testified as a consultative medical expert at Delu's March 2020 administrative hearing. (AR. 796–811.) As a board-certified ear, nose, and throat specialist, Dr. Bruce testified about Delu's Meniere's disease and the associated symptoms of hearing loss, dizziness, vomiting, and balance issues. (*Id.*) Dr. Bruce also testified about Delu's work-related limitations, opining:

> I don't have exertional limitations [for Delu]. Postural limitations, I do. Because of [Delu's] history of dizziness, she would avoid all climbing ladders, ropes or scaffolds. Balancing—and she may not be able to do that. And I put those down as never.

(AR. 803.) Counsel at the hearing asked Dr. Bruce to clarify what he meant by balancing, stating: "On balancing, you said never. And I guess, as a lay person, it sounds like someone who just . . . couldn't walk, who just could never, ever be allowed to move." (AR. 805.) Dr. Bruce responded:

> I think of balancing, like in the workplace, would be leaning over something to try to pick something up . . . where if she had a dizzy spell, it could be a problem. Could it be occasional? I guess, that she could balance, occasionally, under certain circumstances.

(*Id.*) When asked to explain what he meant by balancing "occasionally, under certain circumstances," Dr. Bruce stated:

> Well, I'm not a vocational expert, knowing all the possible ways that somebody could get into that. But like I was saying, if you were in a situation where, to lose your balance while you were doing something might either cause a fall that was greater than a fall to a carpeted area, where there might not be any injury, to a fall of some distance, or onto a hard surface or fall into a machine, then I would say that's why I think I would— might say, occasional, because of those different circumstances. Yeah . . . I don't really feel qualified to try to pick up every possible opportunity where balancing, you know . . . cause we're all balancing, to some extent, just walking around. I understand that.

(AR. 806.) Then, when asked whether "the record establishes [that Delu's dizziness] could reasonably result in [Delu] falling, from a standing and walking position," Dr. Bruce responded,

> I think that's possible, from what we saw . . . her symptom complex definitely tended toward supporting the diagnosis of Meniere's disease, . . . which can be characterized by potential attacks of dizziness. So it could strike[] at any time. And I mentioned you could be standing and walking; you could be doing something; you could even be laying in bed and have this happen. . . . [or] even seated.

(AR. 809–10.)

In determining Delu's RFC, the ALJ reviewed, among other things, Dr. Bruce's testimony. (AR. 1466.) The ALJ afforded Dr. Bruce's medical opinion "partial weight." (*Id.*) The ALJ agreed with Dr. Bruce that Delu should "avoid all climbing of ladders, ropes, or scaffolding, and exposure to moving machinery and unprotected heights," reasoning that these are limitations "appropriate for [Delu], given the nature of her impairments and her allegations, during the period at issue." (*Id.*) The ALJ disagreed, however, with Dr. Bruce's opinion regarding Delu's limitations for verbal and telephone communications, reasoning that Dr. Bruce's testimony on this point contradicted objective medical evidence in the

record. (*Id.*) The ALJ afforded this part of Dr. Bruce's opinion little weight. (*Id.*) The ALJ noted that Dr. Bruce recommended "occasional balancing" for Delu, but the ALJ neither expressly accepted nor rejected this part of Dr. Bruce's opinion. (*Id.*)

In her RFC determination, the ALJ found that Delu "had the [RFC] to perform light work . . . with the following exceptions: occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolding; [and] frequently balance." (AR. 1464.) Delu argues that the ALJ's RFC finding as to her balance impairments is unsupported by substantial evidence because the ALJ "failed to acknowledge or discuss [Dr. Bruce's] testimony that [Delu's] medical impairment supported that she was a fall risk at work while sitting, standing or walking due to her vestibular impairment." (Doc. 19 at 10–11.) In other words, Delu contends that the ALJ improperly weighed Dr. Bruce's opinion regarding her ability to balance. The Court disagrees.

Because Delu's claim was filed before March 27, 2017, pre-2017 SSA regulations govern how the ALJ was to weigh medical opinion. 20 C.F.R. § 404.1527. These regulations classify medical opinions into the following categories: treating physicians, examining physicians, and non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, treating and examining physician opinions are given greater weight than non-examining physicians. *Id.* at 830. SSA regulations provide that "because nonexamining [physicians] have no examining or treating relationship with [a claimant], the weight [an ALJ] will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions." 20 C.F.R. § 404.1527(c)(3). "[T]he more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." *Id.* § 404.1527(c)(4). Moreover, "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

Here, although Dr. Bruce—a nonexamining physician—opined that Delu was limited to "occasionally balancing," the ALJ determined that Delu could "frequently

balance." The ALJ noted that, unlike Dr. Bruce, two other nonexamining physicians, Dr. Kurtin and Dr. Wright, opined that Delu could frequently balance. (AR. 1468.) The ALJ agreed with Dr. Kurtin and Dr. Wright that Delu's alleged severity of dizziness and vertigo exceeded objective examination findings. (*Id.*) One such examination was Delu's 2014 negative Romberg test, a neurological examination that tests for balance issues. (AR. 423.) The ALJ also noted that an examining physician, Dr. Palmer, opined that although Delu showed signs of imbalance in a 2017 neurological examination, Delu did not have any limitations in standing, walking, or sitting. (AR. 1467.) The ALJ determined that a limitation of "no more than frequent balancing" was appropriate for Delu's impairments, but that the record, as a whole, did not warrant additional physical limitations.

Given the conflict between Dr. Bruce's opinion and other evidence in the record, it was reasonable for the ALJ to afford less weight to this part of Dr. Bruce's opinion. Dr. Bruce's "occasionally balance" limitation conflicted with objective medical testing and with two other medical opinions. Additionally, whereas Dr. Bruce opined that Delu was at risk of a fall even while sitting and standing, Dr. Palmer found that Delu had no limitations in sitting, standing, or walking. And as discussed above, an examining physician's opinion—like Dr. Palmer's opinion—is generally entitled to more deference than a nonexamining physician's opinion. *Garrison*, 759 F.3d at 1012. In reconciling the opinions, it was reasonable for the ALJ to afford more weight to Dr. Palmer, Dr. Kurtin, and Dr. Wright's opinions over Dr. Bruce's.

Moreover, Dr. Bruce himself wavered in his opinion, first opining that Delu could "never balance" and later opining that she would "occasionally balance." The ALJ was entitled to resolve these conflicts in the record, and the Court may not substitute its opinion on weight to be given to conflicting evidence. *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (citing *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)) (noting that it is a "fundamental principle than an agency, its experts, and its [ALJs] are better positioned to weigh conflicting evidence than a reviewing court"). Though Delu advocates for a more favorable interpretation of the evidence, the Court finds that the ALJ properly weighed and

credited Dr. Bruce's testimony and that the "frequently balance" limitation is supported by substantial evidence.

To the extent that Delu is arguing that the ALJ's RFC determination fails to expressly account for her risk of unexpected falls, the Court is not persuaded. Anytime an RFC includes a limitation, this necessarily implies that there are times when a claimant cannot do a certain activity. For instance, here, the ALJ limited Delu to "frequently balancing." This necessarily implies that there will be times Delu cannot balance, say because of an unexpected fall. Thus, by limiting Delu to frequent balancing and having her avoid climbing ladders, ropes, or scaffolding, and moving machinery, the ALJ has reasonably accounted for Delu's fall risk. The ALJ's step-four RFC determination as to Delu's balance impairment is reasonable and supported by substantial evidence.

### B. Vocational Expert Testimony

At step five, an ALJ considers a claimant's RFC, age, education, and work experience to determine whether a claimant can make adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If she can make such an adjustment, then the ALJ will find the claimant not disabled. *Id.* In making this finding, an ALJ may rely on a vocational expert ("VE") to testify as to "(1) what jobs the claimant, given [her RFC], would be able to do; and (2) the availability of such jobs in the national economy. At the hearing, the ALJ poses hypothetical questions to the [VE] that 'set out all of the claimant's impairments' for the [VE's] consideration." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

Delu argues that ALJ's step-five finding of "not disabled" is unsupported by substantial evidence because the ALJ failed to consider testimony by VE Sharon Ripp, who testified at Delu's 2020 administrative hearing, and a report by VE Mark Heckman, whom Delu retained in 2021 to prepare a written memorandum. Specifically, Delu points to Ripp's testimony regarding employers' general tolerance for a worker who is prone to falling (AR. 829–30) and Heckman's statements that an individual prone to falling would require accommodations that employers are unlikely to willingly provide (AR. 1659–71). Delu contends that this testimony "patently establish[es] that an individual limited as

described by Dr. Bruce would be a risk to herself and others, and thus to an employer, a risk which could only be overridden by employer accommodations." In other words, Delu argues that, contrary to the ALJ's step-five finding, no jobs exist for someone with Delu's RFC because employers are unlikely to hire someone with a fall risk. The Court is not persuaded.

An ALJ's step-five finding focuses on whether a claimant's RFC and vocational abilities make it possible for a claimant to do work which exists in the national economy. 20 C.F.R. § 404.1566(c). The step-five finding does *not* account for whether employers are likely to hire the claimant. Indeed, SSA regulations expressly provide that so long as a claimant's "[RFC] and vocational abilities make it possible for [her] to do work which exists in the national economy," an ALJ will find the claimant not disabled irrespective of the claimant's "inability to get work" and the "hiring practices of employers." *Id.* Thus, to the extent the ALJ did not consider or rely on Ripp and Heckman's assertions that employers are unlikely to hire someone with a fall risk, the ALJ did so correctly.

Furthermore, the Court finds that the ALJ's step-five finding of "not disabled" is supported by substantial evidence. The ALJ relied on testimony by VE Victoria Rei, who testified at Delu's 2021 hearing. (AR. 1473.) Rei testified that a hypothetical individual with the same age, education, work experience, and RFC as Delu could work as a: ticket taker, which has 114,000 jobs in the economy; greeter, 36,000 jobs; and garment sorter, 36,000 jobs. (AR. 1527–28.)

Where the hypothetical the ALJ poses to the VE contains all of the limitations the ALJ finds credible and supported by substantial evidence in the record, the "ALJ's reliance on testimony the VE gave in response to the hypothetical . . . [is] proper." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Here, the ALJ's hypothetical to VE Rei referenced all the limitations listed in Delu's RFC, including those related to her balance impairments. Other than the limitation regarding her balance impairment, Delu does not challenge any other part of the ALJ's RFC determination. And as discussed, the Court finds substantial evidence supporting the ALJ's RFC as it pertained to Delu's ability to balance.

1 | Thus, the ALJ's reliance on VE Rei's testimony was proper. Substantial evidence supports
2 | the ALJ's step-five finding that Delu is not disabled.
3 |     **IT IS ORDERED** that the ALJ's decision is **AFFIRMED.** The Clerk is directed to
4 | enter judgment accordingly and terminate this case.
5 |     Dated this 18th day of October, 2023.

Douglas L. Rayes
United States District Judge